**Allan Leroy LUCKMAN, Petitioner,**

v.

**John C. BURKE, Warden, Wisconsin
State Prison, Respondent.**

**No. 68–C–28.**

United States District Court
E. D. Wisconsin.

March 18, 1969.

Darryl K. Nevers, Milwaukee, Wis., for petitioner.

Bronson C. LaFollette, Atty. Gen., William A. Platz, Jeffrey B. Bartell,

Asst. Attys. Gen., Madison, Wis., for respondent.

## OPINION AND ORDER

REYNOLDS, District Judge.

A petition for writ of habeas corpus, prepared *pro se*, was filed with this court by Allan Leroy Luckman who is presently incarcerated in the Wisconsin State Prison. A response was ordered and an attorney was appointed to represent petitioner. Counsel for petitioner and for the state have prepared a stipulation of facts which they agreed makes an evidentiary hearing unnecessary. Extensive briefs have been filed, and they have been most helpful to the court.

The crux of petitioner's claim that he is entitled to a writ of habeas corpus is that (1) he was denied a speedy trial, and (2) his plea of guilty was involuntary. The facts surrounding petitioner's incarceration are complex and require a somewhat lengthy statement.

Between April 28, 1962 and May 22, 1962, six criminal warrants charging petitioner with a total of five counts of armed robbery and one count of conspiracy to commit armed robbery were filed by the district attorneys of three Wisconsin counties. Four of these charges were in Waukesha County, one was in Milwaukee County, and one was in Washington County.

Shortly after these alleged crimes took place, in 1962, the petitioner was imprisoned in the Michigan State Prison for a criminal offense in that state and was serving a sentence of eight to twenty years. Wisconsin authorities knew of his incarceration and filed a detainer with the Michigan prison authorities against petitioner.

On June 3, 1963, and again on October 29, 1963, petitioner wrote to the District Attorney of Waukesha County, Wisconsin, from Michigan State Prison and requested that the charges against him in Wisconsin be dropped, or that he be brought to Wisconsin for trial. The text of these letters is set out below.[1] Both letters were received by the Waukesha County District Attorney who answered each letter indicating that the charges would not be dropped, and that petitioner should obtain legal advice and provide "the proper legal papers" in order to "proceed with the prosecution in these matters." The text of these letters is set out below.[2]

1. Petitioner's letter of June 3, 1963, to the District Attorney:

"Dear Sir;

"In Regards [sic] to 4 charges dated 5/22 and 23/62. I would like to know if there is any chance of getting them dropped. I am doing and [sic] 8 to 20 here. I am willing to pay the that [sic] was took. I would not be able to pay until I get out of here. Will all of them be droped [sic] if I pay. If this would be all right with you how will the transaction have to take places [sic]. If this will not be alright with you *I would like to get tryed right away.* Could you write and tell me what you think can be done." (Emphasis added.)

Petitioner's letter of October 29, 1963, to the District Attorney:

"Dear Sir,

"I wish to inform the prosecutors office that *I am available to stand trial* on the warrant being held by your office in that County. *Please bring me back to stand trial on said charge or charges or*

*drop the warrent [sic] against me.* I am now serving a twenty year sentence here in Mich. and would like to have all charges against me prosecuted or dropped, so when I am finally able to get out of here I will not have to face more time in Wisc. Please inform me as to the intention of the prosecutors office in the disposition of this case." (Emphasis added.)

2. District Attorney's letter of June 27, 1963, in response to petitioner's letter of June 3, 1963:

"Dear Mr. Luckman:

"Your inquiry of June 3, 1963, is hereby acknowledged.

"Please be advised I have no intentions of dropping any of the charges pending against you for the four offenses committed in Waukesha County, Wisconsin, on May 12, May 14, and May 21, 1962.

"If you desire that immediate action be taken, it will be necessary for you to provide us with the proper papers. I am certain you can obtain the necessary legal advice in order to proceed in accord-

In addition, petitioner wrote to the judge of the County Court of Waukesha County, Wisconsin, and to the Wisconsin Attorney General's office asking that the charges against him be dropped. On December 2, 1963, in response to a letter written by petitioner, the judge wrote a letter to petitioner as follows:

"I have your letter and must advise you that I have no authority to dismiss the charges pending against you. If the State of Michigan will release you to Wisconsin authorities, I would be glad to hear your case and return you to the State of Michigan after sentence has been imposed in this state, *and, in all probability, would permit the Wisconsin sentences to run concurrently with the Michigan sentences.* This court has no authority, however, to remove you from the State of Michigan to stand trial on the charges pending against you without the consent of the Michigan authorities." (Emphasis supplied.)

On May 28, 1964, in response to inquiry from Wisconsin authorities, the director of the Michigan Department of Corrections sent a letter to the judge indicating that Michigan ·could not release the petitioner under any statutory provisions currently in effect, and that Michigan would retain the Wisconsin detainer in effect and notify Wisconsin authorities before petitioner was released. This is the first indication in the record of this case of any person attempting, on behalf of the State of Wisconsin, to bring the petitioner to trial in this state. This occurred approximately one year after petitioner first informed the Waukesha District Attorney of his desire to be tried "right away."

Thereafter, on July 31, 1964, an attorney was appointed to represent petition-

ance with the federal and state statutes involved."
District Attorney's letter of November 8, 1963, in response to petitioner's letter of October 29, 1963:
"Dear Mr. Luckman:
"Your letter of October 29, 1963, is acknowledged.

er. On or about September 10, 1964, an alternative writ of mandamus was served upon the District Attorney of Waukesha County requiring him to show cause why petitioner should not be brought before a magistrate for speedy trial or, in the alternative, why the pending charges should not be dismissed.

The same judge who wrote petitioner presided at the hearing in the action for mandamus on September 21, 1964. The State of Wisconsin had not produced the petitioner, but he was represented by legal counsel. At said hearing, the Court stated to the District Attorney of Waukesha County:

"The Court could direct that the District Attorney produce the defendant within a given period of time or show the Court cause why the defendant could not be produced and notwithstanding whether a formal application was made to the District Attorney prior to this time, not conceding for the purposes of this argument that formal application has been made, the action before the Court constitutes formal notice to the District Attorney to either produce the defendant or dismiss the charges. The District Attorney is now fully noticed that the defendant desires to be brought to trial. I feel in the event he were not brought to trial at this time, on a hearing the Court might direct the dropping of the charges."

Immediately thereafter, on September 21, 1964, the District Attorney wrote to the Governor of Michigan asking him to advise the Wisconsin authorities as to Michigan's position if extradition were commenced.

On January 21, 1965, after considerable correspondence between the Michigan and Wisconsin authorities, the Dis-

"It is my legal opinion that this information included in said letter does not constitute legal notice sufficient to warrant our returning you to Wisconsin at this time. May I suggest that you contact legal counsel for assistance. Upon receipt of the proper legal papers, steps will be taken to proceed with the prosecution in these matters."

trict Attorney was advised that Governor Romney of Michigan had granted extradition to allow prosecution of the petitioner in Wisconsin provided that he be immediately returned to Michigan to complete his sentences previously ordered for offenses committed in Michigan.

Thereafter, on February 1, 1965, petitioner appeared for the first time in a Wisconsin court in connection with the Waukesha County crimes charged as hereinbefore stated. The offenses in Milwaukee and Washington Counties were consolidated according to law so that they could all be disposed of by the Waukesha County Court.

The judge who presided at the mandamus hearing also presided at the arraignment. Petitioner appeared with legal counsel but did not raise the issue of denial of speedy trial at this court proceeding.

Prior to accepting the pleas of guilty on the six charges, the following dialogue took place on the record:

"THE COURT:

Mr. Luckman, do you understand each of the counts?

DEFENDANT:

Yes.

THE COURT:

Is it your desire to plead guilty to each of the six counts?

DEFENDANT:

Yes.

THE COURT:

No threats or promises have been made to you?

DEFENDANT:

No.

THE COURT:

The plea to each count is freely and voluntarily given?

DEFENDANT:

Yes.

THE COURT:

Do you feel you have been adequately represented in this matter?

DEFENDANT:

Yes, sir.

THE COURT:

A plea of guilty to each of the six counts is accepted."

The Court sentenced petitioner on each of the five armed robbery charges to a term of not more than five years in the Wisconsin State Prison. On the conspiracy charge, he was sentenced to a term of not more than two years in the Wisconsin State Prison. All of said sentences were ordered to run concurrently with each other.

The certificate of conviction on file at Fox Lake Correctional Institution indicates that said sentences are to run consecutively with the sentence petitioner was then serving in Michigan which is in accordance with Wisconsin law, as it then existed. However, the Waukesha County Court did not specifically state that the sentences were to run consecutively with the Michigan sentence during the proceedings in court. At the conclusion of his prison time in Michigan State Prison, petitioner was immediately transferred to the Wisconsin State Prison to commence serving his Wisconsin sentences.

## WERE PETITIONER'S GUILTY PLEAS VOLUNTARY?

Petitioner contends that the pleas of guilty he entered to each of the six charges were not voluntary because they were entered under the misapprehension of a material fact, i.e. that the Wisconsin sentences would be served concurrently with the Michigan sentence. The petitioner claims that the letter from the judge, written in December 1963, induced him to plead guilty under the belief that he not only could, but probably would, receive a sentence concurrent with the Michigan sentence he was serving.

It is conceded that petitioner has exhausted his state remedies on this claim. The Wisconsin Supreme Court has rejected petitioner's contention that his

plea was not voluntary and denied his petition for a writ of habeas corpus.[3]

■ The voluntariness of the pleas depends on the totality of the circumstances in which the pleas were made. The statements made in court by the defendant, in which he answered affirmatively the question of whether the plea to each count was voluntarily given, should not *per se* foreclose inquiry into the voluntariness of the plea. See United States ex rel. Perpiglia v. Rundle, 221 F.Supp. 1003 (E.D.Pa.1963).

Consequently, in this case, it is necessary to evaluate the letter from the judge to the petitioner and determine what, if any, effect it had on the voluntariness of the pleas.

The letter clearly does not mention a plea of guilty. It does not appear to this court to constitute what is normally referred to as "plea bargaining"; there is no offer of a *quid pro quo*—of a concurrent sentence in exchange for a plea of guilty. However, the letter does strongly suggest—especially to one untrained in the law—that a sentence concurrent with the sentence then being served in Michigan would be given "in all probability." The suggestion was erroneous. It was impossible at that time under Wisconsin law for Wisconsin sentences to run concurrently with those of a sister state when the prisoner was serving his sentence in a penal institution in the sister state.[4]

■ I find that this letter from the judge before whom the case was heard created a very real and significant misconception on the part of petitioner as to the potential sentence. The letter reasonably induced petitioner to believe that he *could* and probably would be sentenced to a term concurrent with the term he was serving in Michigan.

■ ■ The state suggests that any misconception by the petitioner which resulted from the letter from the judge is automatically removed by the presence of an attorney on behalf of the defendant. State v. Koerner, 32 Wis.2d 60, 145 N.W.2d 157 (1966), clearly allows the court to assume that counsel has advised the defendant of the range of penalties. However, that opinion in no way implies that a court may assume, without inquiry, that an erroneous view of the law given the defendant by the judge himself has been corrected by counsel. When erroneous information, given by the judge, relates to the potential sentence, the error is fatal unless clearly corrected. It is well established that a plea of guilty is not voluntary if the defendant does not understand the consequences of the plea. Clearly, no consequence is more direct and fundamental than the potential sentence.

■ There is no indication in the record of this case, which includes the transcript of all state court proceedings, that anyone at any time ascertained whether or not Luckman understood even the most direct consequence of his plea— the potential sentence. The record is further lacking in any evidence that Luckman in fact understood the potential sentence regardless of the lack of inquiry. Consequently, this court finds that Luckman did not understand the most fundamental consequence of his

3. Wisconsin Supreme Court Unpublished Opinion No. 67/20, filed April 7, 1967.

4. Letter to this court of July 25, 1968, from the State Attorney General's office, stated in part:
   "I may add that under the law of Wisconsin Judge Callow had no authority to provide that the Wisconsin sentence run concurrently with sentence then being served in Michigan. Service of the Wisconsin sentence would necessarily have to be deferred until he was received at the Wisconsin state prison."

Consequently, for the purposes of this case, it will be assumed that it was impossible for a Wisconsin sentence to be served concurrently with a sentence imposed by another state at the time Mr. Luckman was sentenced. However, in 1967, § 959.07(1) of the Wisconsin Statutes was amended to specifically allow judges in Wisconsin to impose sentences to run concurrently with sentences being served in a federal institution or an institution in another state.

plea, and the plea was, therefore, involuntary.

A similar conclusion was reached on analogous facts by the Court of Appeals for the Fourth Circuit in Bailey v. MacDougall, 392 F.2d 155 (4th Cir. 1968). In *Bailey,* the court granted the petition for writ of habeas corpus on the grounds that the defendant had not understood the consequence of his plea and such plea was, therefore, involuntary. The defendant was at all times represented by counsel. Plea bargaining occurred, and the final agreement was reduced to writing. According to the agreement, in exchange for a plea of guilty the police chief and state's solicitor (prosecutor) promised to recommend parole or pardon after the defendant served not more than ten years. The agreement was kept and the recommendation was made, but the parole and pardon were denied.

However, because the defendant Bailey had believed that if he pleaded guilty, pursuant to the agreement, he would under no circumstances spend more than ten years in prison, the court concluded that the plea was not voluntary. The court in *Bailey* points out that the record indicates no inquiry whatsoever as to whether defendant in fact understood the consequence of his plea, i.e., the potential sentence he faced.

Like the *Bailey* court, this court is of the opinion that where there is a misconception of the consequence of the plea, especially where it is induced by an officer of the court or by the court itself, it must affirmatively appear that the misconception was corrected and that the defendant in fact understood the consequences of his plea.

## WAS PETITIONER DENIED HIS RIGHT TO A SPEEDY TRIAL?

The state contends that the question of whether the delay in extradition denied petitioner a speedy trial is not properly before the court. It is the state's theory that this issue was not raised in the same light before the state supreme court as it is here presented, and that consequently this issue must be remanded for a state determination on the merits.

The petitioner filed a *pro se* petition for writ of habeas corpus in the state supreme court. One of the grounds upon which the writ was sought was the denial of a speedy trial. The petition was denied in Unpublished Opinion No. 68/74 wherein the Wisconsin Supreme Court concluded that:

"None of the grounds alleged being meritorious, the petition for writ of habeas corpus should be, and the same hereby is, denied."

The state asserts that because petitioner, in his *pro se* petition to the Wisconsin Supreme Court, raised the issue of denial of a speedy trial but did not state that he had affirmatively sought to be returned for trial, petitioner is precluded from raising that assertion here. The state would have the matter dismissed on this issue for failure to exhaust state remedies, thus, in effect, forcing petitioner to begin anew the process of seeking a writ of habeas corpus in the state court.

▇ The law does not require such a result. The issue of denial of a speedy trial has been raised and determined by the highest court in the State of Wisconsin. The constitutional claim was presented. The fact that the court might have decided it differently had it further investigated the facts of the case or had it appointed an attorney for the petitioner to aid in the presentation does not lessen the finality of the decision. Petitioner has effectively exhausted his state remedies and is entitled to a ruling on the merits of the claim by this court. Cf. Irvin v. Dowd, 359 U.S. 394, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959) ; United States ex rel. Kemp v. Pate, 359 F.2d 749 (7th Cir. 1966).

In the case at bar, the state, through the district attorney, knew that petitioner was incarcerated in Michigan and obtained this knowledge at some time shortly after the charges were filed in

May 1962. The same district attorney had actual knowledge, and therefore actual notice, that petitioner desired a speedy trial by virtue of petitioner's letters, the first of which was dated June 3, 1963. However, in spite of the actual knowledge that the petitioner desired to be tried, the district attorney ignored the request and told petitioner he could not be tried until the "proper legal papers" had been provided by petitioner.

■ Although an inquiry was made in May 1964, actual attempts to extradite petitioner for the purpose of trial were not begun until after the court hearing on the action for mandamus in September 1964. Petitioner's demands for a trial were, in effect, ignored by the state for fifteen months. This lack of action by the state deprived petitioner of his right to a speedy trial.

Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), supports the conclusion reached in the case at bar. Smith was incarcerated in a federal prison at Leavenworth, Kansas. Shortly after the charges were filed against him in Texas, Smith wrote to the Texas trial court requesting a speedy trial. Texas took the position that it would try Smith within two weeks of any date he specified that he was available, but at no time did the state make any effort to secure his presence in the state for trial. Some six years after the charges were filed in Texas, Smith sought a writ of mandamus to compel the dismissal of the charges for want of prosecution. The state courts denied the writ. The Supreme Court, however, set aside the state court order and stated:

"* * * Upon the petitioner's demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the Harris County court for trial."

In the case at bar, the State of Wisconsin ignored petitioner's demand some fifteen months. This clearly violates the duty of the state "to make a *diligent* good-faith effort" to secure the presence of petitioner for trial. The convictions are, therefore, unconstitutional and must be vacated and set aside.

For all the foregoing reasons, the convictions under which petitioner is now sentenced are constitutionally defective and therefore void.

The foregoing constitute the findings of fact and conclusions of law in this case pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

The court wishes to thank Attorney Darryl K. Nevers, who was appointed by the court, for his fine work on behalf of the petitioner in this case.

For all the foregoing reasons,

IT IS ORDERED that the petition for writ of habeas corpus shall be and hereby is granted, and petitioner, Allan Leroy Luckman, is hereby ordered discharged from custody under the present judgment of conviction. However, execution of the order will be stayed for a period of thirty days. At the end of that period if there has been no appeal taken from this ruling, the writ will be executed and the prisoner released.