536 F.2d 813
 Lester YELLOWWOLF, Jr., Petitioner-Appellant,
v.
Charles MORRIS, Secretary, Department of Social and Health
Services, Respondent-Appellee.
Frank A. MIESBAUER, Petitioner-Appellant,
v.
Charles MORRIS, Secretary, Department of Social and Health
Services, Respondent-Appellee.
 Nos. 75-1300, 75-1546.
 United States Court of Appeals,
Ninth Circuit.
 April 12, 1976.
As Amended on Rehearing June 16, 1976.
 
 Richard D. Emery (argued), Prison, Legal Services Project, Seattle, Wash., for petitioners-appellants.
 William C. Collins, Asst. Atty. Gen. (argued), Olympia, Wash., for respondent-appellee.
 OPINION
 Before CHOY and GOODWIN, Circuit Judges, and REAL,* District Judge.
 CHOY, Circuit Judge:
 
 
 1
 Yellowwolf and Miesbauer each applied for a writ of habeas corpus on the ground that this court's ruling in United States ex rel. Pebworth v. Conte, 489 F.2d 266 (9th Cir. 1974), should be applied retroactively. The district court dismissed the petitions. We affirm.
 
 
 2
 Yellowwolf was charged with grand larceny in Yakima County, Washington and appeared for arraignment on June 19, 1969. He was informed that he had a right to counsel before he entered a plea to the charge and a right to appointed counsel if he was without funds. He waived the right to counsel. The court asked Yellowwolf if he was fully aware of the nature of the charge and if he realized that it was a penitentiary offense, and he responded to both in the affirmative. The court further advised Yellowwolf that he could have additional time to consider his plea. Yellowwolf stated that he was ready to plead, and he pleaded guilty. He was then asked if he was entering his plea voluntarily, without being forced, coerced, or threatened. Yellowwolf acknowledged that he was pleading guilty because he was guilty. The court then asked him if he was pleading guilty with the knowledge and understanding that he had a right to a jury trial, to subpoena witnesses in his behalf, and to confront his accusers. Yellowwolf said that he understood these rights. His plea of guilty was then accepted. Four days later, he was sentenced to fifteen years imprisonment under the Washington indeterminate sentence statute, Rev.Code Wash. § 9.95.010.
 
 
 3
 Miesbauer was charged with grand larceny in Clark County, Washington and appeared for arraignment on November 9, 1962. After a preliminary inquiry into his background, the court asked the defendant if he had consulted an attorney. Miesbauer said that he had not, and he stated that he thought he was guilty. He was then informed of his right to counsel and to appointed counsel if he was without funds and asked if he desired appointed counsel. Miesbauer indicated his desire to "get it over with" and stated that he was guilty. He waived his right to counsel and the arraignment proceeded. The prosecuting attorney then read the charge. The court asked if the charge was understood, and Miesbauer said that it was.
 
 
 4
 The court gave Miesbauer a deferred sentence under Rev.Code Wash. § 9.95.210. He was placed on probation for two years and was told that if he complied with the terms of the probation he would be allowed to change his plea and clear his record. He was admonished that if "you (Miesbauer) go out and steal any more cars, then you're on your way to the State Reformatory for about three and a half years minimum." Approximately five months later he was charged with probation violation. He was represented by counsel when he appeared at the revocation hearing. He did not ask permission to withdraw his guilty plea, although he was made aware that he was to be sentenced to the state penitentiary.
 
 
 5
 Having exhausted state remedies,[1] Yellowwolf and Miesbauer each petitioned the district court for a writ of habeas corpus. They contended that their guilty pleas were invalid as not having been made voluntarily and intelligently since they had not been informed of their potential maximum sentences at the times of the pleas. A similar claim was upheld by this court in United States ex rel. Pebworth v. Conte, 489 F.2d 266 (9th Cir. 1974). Nonetheless, the district court, treating them together, dismissed the petitions. From that decision, the petitioners here appeal.
 
 
 6
 The question posed is whether our decision in Pebworth should be applied retroactively to guilty pleas entered prior to January 2, 1974, the date of the Pebworth opinion.
 
 
 7
 Pebworth involved a factual situation similar to these: a petition for habeas corpus alleging that the petitioner's guilty plea given years before was made without knowledge of the range of punishments that could be imposed. This court remanded for an evidentiary hearing to determine whether he had been in fact aware of the possible sentence and ruled that if the answer was negative, the plea and the conviction should be vacated, giving the state the choice of retrying or releasing him.
 
 
 8
 The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. Brady v. United States, 397 U.S. 742, 747-48 nn. 4-6, 90 S.Ct. 1463, 1468-69, 25 L.Ed.2d 747, 756 (1970); Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). There are two distinct elements involved in analyzing the validity of a guilty plea. One is whether the act was "voluntary." The other is whether the defendant's trial rights have been effectively waived, which requires that the act be "intelligent." Schneckloth v. Bustamonte, 412 U.S. 218, 238 n. 25, 93 S.Ct. 2041, 2053, 36 L.Ed.2d 854, 869 (1973). To qualify as an intelligent waiver of constitutional rights, the guilty plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." Brady, 397 U.S. at 748, 90 S.Ct. at 1469, 25 L.Ed.2d at 756.
 
 
 9
 Pebworth represents a specific application and extension of this "intelligence" prerequisite. Prior to Pebworth this court had not specifically identified the potential sentence as an individual factor so important as to be essential for an intelligent guilty plea.[2] Instead, we have moved slowly and cautiously in singling out particular bits of knowledge as necessary.[3]
 
 
 10
 In so identifying the maximum potential sentence, Pebworth did not state that ignorance of the potential sentence was necessarily prejudicial; that such non-awareness always served to induce a plea of guilty and a waiver of rights that would not have otherwise been given.[4] Rather, the Pebworth rule is prophylactic in intent, designed to prevent a prejudicial effect in any case by imposing a more easily reviewable requirement in every case.[5] In that way it is similar to other dictates announced in recent years concerning the acceptance of guilty pleas. See, e. g., Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); United States v. Myers, 451 F.2d 402 (9th Cir. 1972).
 
 
 11
 We note that the rules announced in those cases have not been given retroactive effect. See, respectively, Moss v. Craven, 427 F.2d 139 (9th Cir. 1970); Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969); Bender v. United States, 478 F.2d 332 (9th Cir. 1973). As observed in Michigan v. Payne, 412 U.S. 47, 53-54, 93 S.Ct. 1966, 1969-70, 36 L.Ed.2d 736, 743-44 (1973), it is appropriate to limit to prospective application decisions which announce prophylactic protections without conferring new constitutional rights. We hold, therefore, that Pebworth should not be applied retroactively.
 
 
 12
 Even if they cannot invoke the Pebworth rule, however, Yellowwolf and Miesbauer further contend that they are entitled to relief on the general ground, noted above, that their guilty pleas were not knowing and voluntary. Specifically, each argues that he would not have pleaded guilty had he known that the potential sentence could be as great as it turned out to be. Since the prior case law on voluntariness and intelligence remains available to those whose pleas of guilty were entered before Pebworth was announced on January 2, 1974, a petitioner who demonstrates such actual prejudice is entitled to relief.
 
 
 13
 We vacate the district court's dismissal as to Yellowwolf's petition and remand to the district court to deal with his contention.
 
 
 14
 In the case of Miesbauer, however, we believe that the existing record establishes that he was not so prejudiced. It may be that he was not aware of the potential sentence when he entered his plea, but at that time he was given probation, so he had nothing of which to complain. It was five months later, when he was charged with violation of probation and his probation was suspended, that he was sent to the penitentiary. At that time he was represented by counsel and was made aware of the consequences, but he did not ask permission to withdraw his guilty plea or raise any objection to the first proceeding. We note further that Miesbauer's petition for habeas corpus, unlike Yellowwolf's never stated directly that he would not have pleaded guilty had he known the potential sentence. Since this record cannot support any claim of prejudice, we deem it unnecessary to remand his cause for further proceedings, and we affirm the dismissal of his petition.
 
 
 15
 Vacated and Remanded as to Yellowwolf.
 
 
 16
 Affirmed as to Miesbauer.
 
 
 
 *
 Honorable Manuel L. Real, United States District Judge, for the Central District of California, sitting by designation
 
 
 [1]
 In 1969 Miesbauer petitioned the state court for a writ of habeas corpus contending that his constitutional rights were violated because he was not advised by the trial court of the consequences of his guilty plea or of the possible maximum sentence he could receive. After an evidentiary hearing, the superior court granted the writ, but that judgment was reversed by the Washington Supreme Court in Miesbauer v. Rhay, 79 Wash.2d 505, 487 P.2d 1046 (1971)
 In 1973 Yellowwolf petitioned the Washington Supreme Court for a writ of habeas corpus on the same basis. The petition was denied on March 14, 1974.
 
 
 [2]
 There have been such holdings elsewhere. Wade v. Wainright, 420 F.2d 898 (5th Cir. 1969); see Bailey v. MacDougall, 392 F.2d 155 (4th Cir.), cert. denied, 393 U.S. 847, 89 S.Ct. 133, 21 L.Ed.2d 118 (1968). Most rulings on this subject, however, including most of those cited by Yellowwolf and Miesbauer, are based on Fed.R.Crim.P. 11, not the Constitution, and so are inapplicable to these state prosecutions. See, e. g., United States v. Myers, 451 F.2d 402 (9th Cir. 1972); Jones v. United States, 440 F.2d 466 (2d Cir. 1971); Paige v. United States, 443 F.2d 781 (4th Cir. 1971); United States v. Blair, 470 F.2d 331 (5th Cir.), cert. denied, 411 U.S. 908, 93 S.Ct. 1536, 36 L.Ed.2d 197 (1973); Pettigrew v. United States, 480 F.2d 681 (6th Cir. 1973); Robinson v. United States, 474 F.2d 1085 (10th Cir. 1973)
 Fed.R.Crim.P. 11 from 1966 to 1974 specifically prevented a federal court from accepting a plea of guilty "without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." In 1974 the rule was amended to explicitly require the court to advise the defendant of, among other things, "the maximum possible penalty provided by law."
 
 
 [3]
 For instance, in Mathis v. Hocker, 459 F.2d 988 (9th Cir. 1972), where the state trial court's failure to advise of ineligibility for parole because of prior convictions was under the circumstances held not to invalidate a guilty plea, we noted the difficulty of specifically advising the defendant of all the possible consequences. Under Rule 11, we held that pleas of guilty were not invalid because the trial judge failed to advise the defendant that sentences could be made to run consecutively. Johnson v. United States, 460 F.2d 1203 (9th Cir.), cert. denied, 409 U.S. 873, 93 S.Ct. 206, 34 L.Ed.2d 125 (1972); Hinds v. United States, 429 F.2d 1322 (9th Cir. 1970); but cf. United States v. Myers, 451 F.2d 402 (9th Cir. 1972)
 
 
 [4]
 We believe that the percentage of those actually prejudiced by the failure to give the advice required by Pebworth was probably small. The potential sentence is an important factor to consider in the decision to plead guilty, but it is just one of many. Even if the exact range was not known, an accused likely had an adequate approximate idea. And in those cases involving a plea bargain, he may well have known what turned out to be the actual sentence, even if he did not know the possible maximum. To be sure, there have probably been some instances where the ignorance was prejudicial, but these seem likely to us to have been relatively infrequent
 This seems particularly true for a state using an indeterminate sentence system, like Washington, where the maximum sentence set by the statute or pronounced by the judge may have little relation to the actual time to be served, which is under the control of another authority.
 
 
 [5]
 We note in particular how Pebworth combines with the Supreme Court's opinion a few years earlier in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), which established the requirement that the record affirmatively disclose that a defendant who pleaded guilty did so understandingly and voluntarily. It is not enough that the defendant was sufficiently aware, under Boykin ; the trial court is obligated to establish that awareness for the record. The logical result has been a ritual series of inquiries and admonitions. Pebworth insures that awareness of the potential sentence is included in that ritual, hence the language in Pebworth about "the responsibility of the state court judge to advise a defendant of the direct consequences of his guilty plea." 489 F.2d at 267