**Vincent CAPUTO, Petitioner-Appellant,**

v.

**Robert J. HENDERSON, Superintendent, Auburn Correctional Facility, Respondent-Appellee.**

**No. 944, Docket 76–2009.**

United States Court of Appeals, Second Circuit.

Argued April 30, 1976.

Decided Sept. 3, 1976.

**980**

Allen M. Kranz, Legal Aid Society of Nassau County, Mineola, N. Y. (James J. McDonough, Matthew Muraskin, Legal Aid Society of Nassau County, Mineola, N. Y., of counsel), for petitioner-appellant.

David L. Birch, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

Before LUMBARD, WATERMAN and MESKILL, Circuit Judges.

MESKILL, Circuit Judge.

Vincent Caputo appeals from an order of the United States District Court for the Eastern District of New York, Weinstein, J., denying his petition for a writ of habeas corpus. On appeal, Caputo contends that his guilty pleas in a state criminal prosecution must be vacated as neither voluntarily nor knowingly entered because the trial court misinformed him about sentencing alternatives just prior to his entering his plea. Because we perceive no clear error in Judge

Weinstein's conclusion, found after an evidentiary hearing, that appellant did not in fact rely on the misinformation in deciding to enter his guilty plea, we affirm the denial of the writ.

Caputo was arrested in Malverne, Long Island on July 26, 1972, in the yard of a house that had just been burglarized. He subsequently gave a statement to two detectives, the voluntariness of which has never been challenged, that he had broken into the house. On September 28, 1972, he was indicted for the crimes of burglary in the third degree, criminal possession of stolen property in the second degree, and possession of burglar's tools. While at the Nassau County Jail Caputo was examined by a physician on October 4, 1972 and found to be addicted to drugs. On October 11, 1972, after conferring with his attorney Paul Wershals, Caputo pleaded guilty to attempted burglary in the third degree in full satisfaction of the indictment. After establishing on the record a factual basis for the plea, the county court advised appellant about sentencing alternatives as follows:

The Court: All right. Now, a conviction, of course, carries with it other possibilities, the possibility of sentence, and I will tell you what the possibilities are here. First let me say that I am informed that you have been examined and reported to be addicted to narcotics or dangerous drugs, and you will have the right, at the time of sentence, to admit your addiction or to deny your addiction or to stand mute, if you prefer.

If you stand mute or you deny your addiction, then you will have the right to have a jury trial or a trial without a jury on the issue.

If you are found to be an addict, then there is a possibility of a sentence to the Narcotics Addiction Control Commission for an indeterminate term, up to 60 months.

Do you understand that?

The Defendant: Yes.

The Court: On the other hand, there is no requirement that you be sent there,

but there is the possibility of a sentence under the Penal Law, instead of the Mental Hygiene Law; and I will tell you what those possibilities of sentence are.

There is a possibility of a sentence to a state prison for an indeterminate term, up to four years, a possibility of sentence to a County Jail for up to one year, the possibility of probation for a period of up to five years, a conditional discharge, and there is also a possibility of an unconditional discharge.

At the time of Caputo's sentencing, the state court had discretion either to sentence an addict to an indeterminate sentence under the applicable provisions of the penal law or to commit him to the Narcotics Addiction Control Commission ("NACC") for an indeterminate period up to a maximum of 60 months.[1] Expressly limited to these two possibilities by statute,[2] the court could not have sentenced Caputo to the county jail, given him a conditional or unconditional discharge, or put him on probation.

At sentencing on November 20, 1972, appellant admitted his addiction to drugs. The court elected to impose the penal sanction of an indeterminate term of imprisonment with a maximum of four years rather than committing him to the NACC. The conviction was affirmed by both the Appellate Division and the Court of Appeals. *People v. Caputo,* 44 A.D.2d 572, 353 N.Y. S.2d 36 (2d Dept. 1974), *aff'd,* 36 N.Y.2d 653, 365 N.Y.S.2d 847, 325 N.E.2d 164 (1975).[3]

Caputo then brought this petition for a writ of habeas corpus.

The federal district court held an evidentiary hearing to determine whether the sentencing misinformation affected Caputo's decision to enter a guilty plea such that the plea was not entered with full knowledge of its consequences. Caputo testified that he believed that all the alternatives outlined by the sentencing judge were available and that no one had advised him otherwise prior to his plea. He denied that his attorney had told him of a possible jail term of up to four years before he pleaded. Although he also denied making a statement in his affidavit that his attorney had so advised him, his memory was refreshed by the affidavit itself.[4] Caputo stated that he "was going to plead guilty that day" but that he "still had a doubt." Paul Wershals, Caputo's attorney at the time of the plea, testified that he had told appellant that a guilty plea probably would mean in indeterminate prison term of up to four years or a indeterminate term with the NACC.[5] Wershals stat-

---

1. At the time of Caputo's plea, Mental Hygiene Law § 81.21(d)2 provided:

   Where sentence is to be imposed for a felony, the court, in its discretion, may either impose an indeterminate sentence to an institution under the jurisdiction of the state department of correction in accordance with the provisions of the revised penal law applicable to sentencing for such felony (except as otherwise provided in subdivision (e) of this section), or certify such defendant to the care and custody of the commission for an indefinite period which shall commence on the date the order of certification is made and shall terminate the first to occur of the discharge of such defendant by the commission as rehabilitated or the expiration of a period of 60 months from the date such period commenced.

2. Former subdivision (e) of Mental Hygiene Law § 81.21 provided in pertinent part:

   In no case to which subdivision (d) of this section is applicable shall the court suspend sentence, the execution thereof, or impose a

sentence other than that specified in subdivision (d) of this section.

3. Caputo's motion to vacate judgment was denied by the County Court of Nassau County, Young, J., on June 10, 1975. Leave to appeal to the Appellate Division, Second Department, was denied by Justice Shapiro on July 16, 1975.

4. That affidavit stated in pertinent part:

   In discussing the possibility of entering a guilty plea to this lesser charge, Mr. Wershals informed me that if I admitted my addiction to drugs I would be subject to a possible indeterminate jail term with a maximum of four years.
   At no time did Mr. Wershals inform me that a definite jail term of one year, a conditional discharge, an unconditional discharge or probation were not available to me if I admitted my addiction to drugs and entered a guilty plea.

5. Wershals' affidavit stated in pertinent part:

   In discussing the possibility of entering a guilty plea to the lesser offense . . . I informed the defendant that by entering such

ed that the evidence against Caputo was so overwhelming that there would have been a "very good chance" of conviction had he gone to trial. Wershals' conclusion was that if Caputo's choice had been between. a trial with a chance of a seven year sentence or commitment to the NACC and pleading guilty with a maximum sentence of four years or commitment to the NACC, he felt that Caputo would have entered a guilty plea. Denying the writ of habeas corpus, the district court found that "on the basis of the evidence . . . the defendant would have pleaded in any event exactly as he did, whatever the judge told him about alternatives, and the error of the Court, therefore, in proposing alternatives that were not in fact available had no impact at all on the plea."

■ There is no doubt that the state trial court provided misinformation about sentencing alternatives by listing possibilities it could not have administered in addition to those it was authorized to impose. Since the trial court record thus did not affirmatively show that Caputo's plea was voluntary, with full knowledge of its consequences, *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the federal district court quite properly held an evidentiary hearing to determine if the plea was voluntary as a matter of fact. *United States ex rel. Hill v. Ternullo,* 510 F.2d 844 (2 Cir. 1975); *Todd v. Lockart,* 490 F.2d 626 (8 Cir. 1974). Caputo first argues that the sole question to be determined by the district court is whether he was fully aware of the actual sentencing alternatives available when he entered his plea. He contends that if he is found to have lacked such awareness, his plea must be vacated without consideration of whether the misinfor-

mation affected his decision to enter the guilty plea. Alternatively, he asserts that, even if applicable, the district court's finding that he did not rely on the misinformation in deciding to plead is clearly erroneous. We disagree with both propositions.

This Court's recent opinion in *Kelleher v. Henderson,* 531 F.2d 78 (2 Cir. 1976), discussed the test for assessing the constitutional validity of a guilty plea entered in a state court. Kelleher claimed that his plea was constitutionally infirm because he allegedly was unaware of the maximum and minimum sentencing possibilities. The district court concluded that, even though Kelleher had not been informed by the state judge or his attorney of the possible maximum or minimum sentences, the plea was valid because Kelleher failed to persuade the court that his lack of knowledge affected his ability to make an intelligent decision. This Court affirmed. Because we so frequently must review cases involving collateral attacks on guilty pleas, we deem it appropriate to reiterate the analytic rationale used in *Kelleher* as it relates to the instant case.

■ The federal trial courts, governed by the requirements of Fed.R.Cr.P. 11, must determine whether a defendant understands "the consequences" of a guilty plea by addressing the defendant personally. After the Supreme Court's decision in *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), failure to comply with Rule 11 required vacatur of a federal guilty plea. In *Jones v. United States,* 440 F.2d 466 (2 Cir. 1971), this Court held that the maximum possible sentence is a "consequence" of a plea. Thus, after *McCarthy,* unawareness of maximum sentence would require automatic vacatur of

a plea he would reduce the potential maximum sentence that the Court might impose. Specifically, I told him that a class E felony conviction carries with it a maximum indeterminate sentence of four years imprisonment.

Prior to defendant's entry of a guilty plea . . . I informed the defendant that in my opinion the Court would impose an indeterminate sentence with a maximum of three or four years.

Prior to defendant's entry of a guilty plea, I never specifically told him that a one year jail term, a condictional [sic] discharge, an unconditional discharge or probation were not available if he pled guilty. . . .

At no time during the entry of defendant's guilty plea or anytime subsequent thereto did I inform the defendant or the Court that [the above described penalties] were not available. . . .

the plea because of noncompliance with Rule 11. In *Jones*, however, the plea was taken prior to *McCarthy*, and therefore noncompliance with the Rule did not require automatic vacatur. *Halliday v. United States*, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969). Our conclusion in *Jones* was that automatic vacatur did not follow as a matter of constitutional law. Instead we remanded for an evidentiary hearing to assess

> whether Jones was aware of the maximum possible sentence at the time of his guilty plea and, if not, whether Jones would not have pleaded guilty if he had been so aware.

440 F.2d at 468. *See also United States v. Welton*, 439 F.2d 824 (2 Cir.), *cert. denied*, 404 U.S. 859, 92 S.Ct. 157, 30 L.Ed.2d 102 (1971); *Serrano v. United States*, 442 F.2d 923 (2 Cir.), *cert. denied*, 404 U.S. 844, 92 S.Ct. 145, 30 L.Ed.2d 80 (1971). Thus, insofar as the federal courts are concerned, "where violation of the Rule does not have its present automatic effect [i. e., where the plea was entered before the decision in *McCarthy*], the determination of constitutional voluntariness must be based not only on whether required advice was omitted by a federal district judge, but also on whether it would have made any difference, if given." *Kelleher v. Henderson, supra,* 531 F.2d at 82. *Kelleher* involved the constitutional voluntariness of a plea in the state courts. Declining to hold state judges to a higher standard of federal constitutional law than that applied to a federal district judge, i. e., in a pre-*McCarthy* situation, we determined that Kelleher's plea did not violate the Fourteenth Amendment because there was "no indication at all" that he would have acted differently had he been informed of the maximum sentence. *Id.*

Appellant relies on two other decisions of this Court, *United States ex rel. Hill v. Ternullo, supra,* and *United States ex rel. Leeson v. Damon,* 496 F.2d 718 (2 Cir.), *cert. denied,* 419 U.S. 954, 95 S.Ct. 215, 42 L.Ed.2d 172 (1974), to support his argument that where a defendant is given misinformation about sentencing, the only question before the district court is his awareness of actual sentencing alternatives. In *Leeson,* the petitioner received misinformation from his attorney about the maximum penalty to which he could be subjected. We there affirmed the granting of a writ of habeas corpus because the "undisputed proof" showed that the defendant entered his plea "believing [the maximum possible sentence] to be substantively less than that which the court was authorized to impose and which, indeed, it did impose." 496 F.2d at 721. *Hill* also questioned the petitioner's understanding of the sentencing consequences because of erroneous information from counsel. In remanding for an evidentiary hearing to resolve the factual dispute over whether Hill had been incorrectly informed of sentencing alternatives, we noted that "there is evidence that [the plea], like Leeson's, was made *with reliance* on erroneous legal advice about the ultimately knowable. . . . ." 510 F.2d at 847 (emphasis added).

Concededly, *Kelleher* and *Jones* were cases in which sentencing information was omitted while in the instant case, as in *Hill* and *Leeson,* misinformation was given. We conclude, however, that the *Hill* and *Leeson* decisions, despite the broad language contained therein, did not alter the test for determining the constitutional voluntariness of a guilty plea. Since neither opinion mentions the *Jones-Welton-Serrano* cases, we share Judge Feinberg's view that it is "highly unlikely" that the earlier decisions were overruled. *Kelleher v. Henderson, supra,* 531 F.2d at 82. More importantly in both *Hill* and *Leeson,* there was evidence that the defendants *did rely* on the erroneous sentencing information from counsel in deciding to plead guilty.[6] Thus,

---

6. Leeson had been told that he faced "at most" a sentence of 1.3 to 2.6 years when he could have received a five year reformatory term because of his youth. After his plea but before sentencing, he wrote to the judge asking to withdraw his plea because of the misinforma-

tion. Hill had been informed by counsel, in one of a total of two private meetings, that the maximum sentence he could receive was four years when in fact he could be sentenced to five to 15 years; there was also a question concerning misinformation about parole eligi-

in effect, the dual inquiry as to awareness and impact of the error, articulated in *Jones,* also occurred in these cases involving sentencing misinformation. We now reaffirm that the proper test for determining the constitutional validity of a state court guilty plea in the event of sentencing misinformation is whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea.[7] Of course, where governmental error is responsible for the misinformation, the government must bear the burden of proof on the issue of reliance.

In the instant case, whether or not it may be "assumed" that accurate sentencing information might affect a defendant's decision to plead guilty, *Kelleher v. Henderson, supra,* 531 F.2d at 82 (dictum), the district court found from the evidence presented at the hearing that the misinformation had no impact upon Caputo's decision to plead guilty. Caputo asserts that this finding is insufficiently supported by the record and thus is clearly erroneous. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). After reviewing the record of the district court proceedings, we are left with no such definite conviction.

■ The crucial question before the district court was whether the erroneous information given by the trial judge at the time of the plea influenced Caputo's decision to plead guilty. Findings which relate to such intangibles as motivation and intent depend especially upon the credibility assessments made by those who see and hear the witnesses. *United States v. Yellow Cab Co.,* 338 U.S. 338, 341, 70 S.Ct. 177, 94 L.Ed. 150 (1949); *United States v. Pfingst,* 490 F.2d 262, 273 (2 Cir. 1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974). In determining that the sentencing misinformation had no effect on appellant's decision to plead, Judge Weinstein obviously did not credit Caputo's assertion that he "still had a doubt" about pleading when the erroneous information was given. The transcript of the proceedings amply supports such an assessment.

■ Contrary to statements in his own affidavit,[8] Caputo testified that, before he pleaded guilty, he had not been informed by his attorney that he would be subject to a possible sentence of up to four years imprisonment. Wershals, Caputo's attorney, directly contradicting this contention on the witness stand and in his affidavit,[9] stated that he had correctly informed Caputo of the sentencing alternatives which could, and one of which ultimately did, result from a guilty plea. Moreover, when testifying, Caputo denied stating in his affidavit that Wershals had informed him of the possible four year term. He changed his testimony, however, upon being shown the affidavit. From this performance on the witness stand, the district judge could properly disbelieve appellant's claim that he still had a doubt about entering a guilty plea when he was erroneously informed of sentencing alternatives. Additional support for this conclusion comes from Wershals' testimony. Wershals stated that in his opinion the evidence was so overwhelming that appellant stood a "very good chance" of conviction if

bility. Finding reliance on the misinformation, we remanded for a district court resolution of conflicting versions of the facts.

7. Nothing in *Henderson v. Morgan,* —— U.S. ——, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), is to the contrary. In *Morgan,* the issue was whether a defendant could enter a voluntary plea of guilty to a charge of second degree murder without being informed that intent to cause the death of the victim was an element of the offense. The Supreme Court held that such a plea could not be voluntary because the defendant never received "real notice of the true nature of the charge against him the first and most universally recognized requirement of due process." —— U.S. at ——, 96 S.Ct. at 2254.

8. See n. 4, *supra.*

9. See n. 5, *supra.*

he went to trial. Judge Weinstein posed the following question to Wershals:

Supposing he [Caputo] had come in that morning and the Court had told him, "If you go to trial you can get zero to seven or N.A.C.C. If you plead you can get zero to four or N.A.C.C." Would he have pleaded?

Wershals replied that Caputo, had he been given accurate sentencing information, would have pleaded guilty. Finally, it must be noted that Caputo was no stranger to the judicial process, having been arrested eighteen times and having served two prior jail sentences and one forty month commitment to the NACC. In short, giving, as we must, "due regard . . . to the opportunity of the trial court to judge of the credibility of the witnesses," Fed.R.Civ.P. 52(a), we cannot conclude that the district court's finding that the sentencing misinformation had no impact on the entering of the guilty plea was clearly erroneous.

Affirmed.