Charles E. DUFFY, F–2268, Appellant,

v.

Julius T. CUYLER and District Attorney, Philadelphia County, Appellees.

No. 77–2099.

United States Court of Appeals, Third Circuit.

Argued March 28, 1978.

Decided June 12, 1978.

Edward Griffith, Duane, Morris & Heckscher, Philadelphia, Pa., for appellant.

---

F. Emmett Fitzpatrick, Dist. Atty., Mark Sendrow, Michael R. Stiles, Steven H. Goldblatt, Gaele Barthold, Asst. Dist. Attys., Philadelphia, Pa., for appellees.

Before HUNTER, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

This appeal from denial of habeas corpus relief questions whether in a nonjury criminal proceeding the defendant was afforded adequate constitutional protection in entering what was labeled a nolo contendere plea. Recent cases delineate what is encompassed in a true nolo plea, and suggest that the same standards apply in entering it as in the case of a guilty plea. But because of the unusual circumstances of the case *sub judice,* we hold that the defendant's conviction was not vitiated by lack of advice on the record of the maximum sentence to which he was exposed. Accordingly, we affirm the district court's denial of relief.

The defendant was sentenced by the Court of Common Pleas of Philadelphia, Pennsylvania on charges of forcible rape, burglary and aggravated robbery growing out of an assault on June 26, 1971. He later petitioned for relief under the Pennsylvania Post Conviction Hearing Act on the ground that his nolo contendere plea had not been voluntarily and intelligently entered. The common pleas court granted a hearing and denied the petition. After exhausting state appellate remedies, he sought a writ of habeas corpus in the district court which, after a hearing, refused to grant relief.

Before trial in the state court, defendant was given a psychiatric evaluation and found to be competent to assist in his own defense, although suffering from a "major mental illness." The report stated that he was a danger to women, tending to aggressively vent his hostility on them, and was therefore a threat to the community.

A motion to suppress a confession was denied after a hearing and the case was listed for trial on July 18, 1972. At the time set, defense counsel told the trial judge that the defendant wished to plead guilty. Counsel then informed the defendant in open court of his rights to either a jury or nonjury trial, to cross-examine prosecution witnesses, present witnesses in his own defense, and advised him of the state's burden of proof.[1] Counsel also told the defendant that if a guilty plea were entered, the district attorney would "just summarize the evidence against you and then it would be up to Her Honor to sentence you; do you understand that?" When asked if he remembered the crime, the defendant said he did not. The trial judge stated that because the defendant did not recall the event, she would allow the guilty plea to be withdrawn so that the case could go to trial. Defense counsel said, "in that case we would prefer to enter a plea of nolo contendere and to let the witnesses speak from the stand and give their testimony, Your Honor."[2] After the defendant

---

1. Under the practice followed in the Pennsylvania state courts at the time, the colloquy could be conducted either by the judge or counsel.

2. At trial, the following colloquy developed:
By Defense Counsel:
Q. What crime did you commit?
A. Rape.
Q. Do you remember this crime?
A. No.
  The Court: Do you remember any part of it?
  The Defendant: No, ma'am.
  The Court: You don't remember going to this house?
  The Defendant: No.
By Defense Counsel:

Q. Do you doubt that you committed this crime?
A. Yes.
  The Court: Do you doubt that you did it?
  The Defendant: Yes.
  The Court: Then why are you entering a guilty plea? When you plead guilty, what you are really saying, Mr. Duffy, is, yes, I did it. Now you're telling me that you don't remember, you don't think you did it.
By Defense Counsel:
Q. You told me before that you didn't know whether or not you did it, that you didn't have any memory of it but you don't doubt that you probably did do it; is that correct?
A. That is correct.

insisted that he wanted to plead guilty, counsel explained the nolo contendere plea:

"In effect what you are saying to the Court is that you do not know whether or not you have committed this crime, you are throwing yourself on the mercy of the Court, she will listen to the evidence; do you understand that?"

The defendant answered, "Yes, I understand."

\*     \*     \*     \*     \*     \*

The Court: "It is a Latin word that says: I don't contest it."

The Prosecutor: "In effect, a guilty plea."

The Court: "It is a Latin phrase. He is a very intelligent man, he has got a good school average according to this report."

When the charges were read and pleas entered, the trial judge said, "I would like to hear the Commonwealth witnesses very fully in this case, especially [the victim]."

The victim testified that the defendant gained entrance to her home through an unlocked door, raped her and took $20 from her. The house was lighted and she was able to make a positive identification of him. A neighbor testified that he had seen the defendant jump over the backyard fence that evening and notified police when the same man appeared in the neighborhood a week later. The police recounted the details of the defendant's arrest near the victim's home about a week after the crime and read a confession he had made a few hours after being apprehended.

Although offered the opportunity, defense counsel declined to question any of the witnesses. At the conclusion of the testimony, the prosecutor said, "That will be the Commonwealth's case."

The trial judge then asked if the defense would like to present evidence, and receiving a negative reply said:

"Mr. Duffy, you know you are ill?

The Defendant: Yes Ma'am.

The Court: You know you're dangerous to the community, you know that?

The Defendant: Yes.

The Court: One side of you is anyway. You apparently have no control over your hostile impulses against women, and you also have this very bad pattern of forgetting after a while what you have done, and that renews the impulse and you continue to do it so that no amount of punishment of a short term nature is going to really act as a deterrent over this problem of a very deep mental level."

The trial judge then accepted the plea of nolo contendere to burglary, robbery and rape, and entered on the court docket:

"7–18–72

Defendant on being arraigned enters a plea of Nolo Contendere. Adjudged Guilty. Sentence deferred, pending the addendum to Dr. Boxer's report from Holmesburg Prison.

By the Court
Richette"

---

The Court: Mr. Deutsch [defense counsel], I am sure of two things now after this colloquy, and I am sure that Mr. Duffy understands what is happening. As I said before, if the reason he is not able to help you is because he has got traumatic amnesia, it is something you are going to have to live with. Every lawyer has had one client with this. You're just going to have to do the best you can, but merely because he doesn't remember should not be an obstacle to bringing him before the bar of justice, and for that reason, I am going to allow you to withdraw this guilty plea and I would like this to go to trial and I would like the record kept of just what went on here for a number of reasons, not the least of which is that this record will then be available to those who will have to treat him.

Defense Counsel: If Your Honor pleases, in that case, we would prefer to enter a plea of nolo contendere and to let the witnesses speak from the stand and give their testimony, Your Honor.

The Court: Does he understand what the plea of nolo contendere is? I don't want to have any problems about this case on appeal, since the simplest thing to do is to enter a plea of not guilty, which is what he just said, he doesn't think he did it; is that right, Mr. Duffy?

The Defendant: Yes, Your Honor, but I still want to enter a plea of guilty.

The Court: You want to plead guilty?

The Defendant: A plea of guilty. I might have done it and I might have not.

The Court: Pardon me?

The Defendant: I might have committed the crime.

Defense Counsel: That is why I asked for a plea of nolo contendere, which I believe would be proper.

On October 24, 1972, the defendant was brought to court for sentencing. The pre-sentence medical report stated that the defendant should not be sent to a mental institution because he was well controlled by medication. Defense counsel suggested a minimum sentence of two or three years and the district attorney recommended 10 to 20 years. Defendant did not ask to have his plea withdrawn. The court then imposed a sentence of 7½ to 15 years.

The defendant did not take a direct appeal, but six months after sentencing commenced Post Conviction Hearing Act proceedings, alleging that he had been under the influence of drugs at the time the plea was taken, that the plea was involuntary, that he did not understand it and did not knowingly and intelligently enter the plea. No contention was made that the plea was defective because of the lack of knowledge of the maximum sentence. After the common pleas court denied the defendant's petition, the Superior Court of Pennsylvania affirmed without opinion, *Commonwealth v. Duffy,* 235 Pa.Super. 709, 344 A.2d 908 (1975), and the Supreme Court of Pennsylvania declined allocatur.

Defendant's habeas corpus petition in the district court was initially referred to a United States Magistrate who recommended that the writ be granted since the record did not show the defendant had been advised of the maximum sentence at the time he entered his plea. The district judge did not accept the magistrate's report and after a hearing, found that the defendant had understood and appreciated that he faced a substantial period of imprisonment and had not been denied his constitutional rights. The court denied the writ.

■ In resolving the issue in this case, an examination of the nature of a nolo contendere plea and its application in this peculiar factual setting is necessary. Nolo contendere is recognized by both Pennsylvania and federal courts, although it is seldom employed in cases of the kind involved here. Its principal utility in modern times is to prevent the introduction of the plea in civil proceedings founded on the same facts. Thus, a plea of nolo contendere to criminal tax fraud or antitrust violations will not preclude the defendant from contesting civil actions which usually are associated with those offenses.

At early common law, the plea was used as an indication of a defendant's willingness to accept a fine in lieu of imprisonment and to rely on the mercy of the Crown. For a discussion of the plea's early history, *see North Carolina v. Alford,* 400 U.S. 25, 35–36, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and *Hudson v. United States,* 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347 (1926). Pennsylvania has held that the plea itself will support a sentence of imprisonment without any proof of guilt, *Commonwealth v. Holstine,* 132 Pa. 357, 19 A. 273 (1890). *See Buck v. Commonwealth,* 107 Pa. 486 (1884). In *Commonwealth v. Rousch,* 113 Pa.Super. 182, 172 A. 484 (1934), the superior court concluded that after acceptance of a nolo contendere plea, a judge had no authority to sit without a jury to determine guilt in contravention of state policy at that time against nonjury criminal trials. The court characterized nolo contendere as a "mild form of pleading guilty" and said that once the plea had been accepted, there would be a judgment of conviction. Pa.R.Crim.P. 319 permits entry of the plea, but only with consent of the court.

Nolo contendere, however, has not been consistently interpreted in all jurisdictions. In *North Carolina v. Alford, supra,* the Supreme Court noted that the plea had been defined in a variety of ways, described in some instances as

"'in effect, a plea of guilty' . . . and [in] other[s] as a query directed to the court to determine the defendant's guilt. . . . As a result, it is impossible to state precisely what a defendant does admit when he enters a *nolo* plea in a way that will consistently fit all the cases." *Id.,* 400 U.S. at 35 n.8, 91 S.Ct. at 166 (citations omitted).

Although Pennsylvania appellate decisions treat nolo contendere as the equivalent of a guilty plea and, upon acceptance, require no more to justify imposition of a sentence, that construction was not contemplated by the defendant and the trial judge in this case. As defense counsel said, he and his client wanted to "let the witnesses speak from the stand and give their testimony," and in addressing the defendant, counsel explained "she [the trial judge] will listen to the evidence." Indeed, the judge emphasized that she would listen to the prosecution witnesses "very fully."

The record reveals that witnesses testified at length and established an overwhelming case against the defendant. The trial judge obviously believed that the prosecution had made out its case when she entered "Adjudged Guilty" in the record. The conviction did not rest upon the nolo contendere plea itself but, rather, upon the evidence presented by sworn testimony in open court. The case differs, therefore, from the usual circumstance in which the plea of nolo contendere is the basis of the judgment and is understood by the court and defendant to be the equivalent of a guilty plea. In that situation, surrounding a nolo plea with almost all of the safeguards required for the guilty plea may be constitutionally required.[3]

Even in a guilty plea setting, disclosure of the maximum sentence as a constitutionally required per se rule with full retroactivity has not been widely adopted. The Supreme Court and this court have not yet been confronted with the issue and the results in other circuits have been mixed. In *United States ex rel. Smith v. Johnson*, 403 F.Supp. 1381 (E.D.Pa.1975), *aff'd*, 538 F.2d 322 (3d Cir. 1976), the district court held that there was no constitutional error involved in accepting a guilty plea where the state trial judge did not tell the defendant what the correct maximum sentence could be. Defense counsel had informed the defendant that the possible term of imprisonment was 60 years when, in fact, the exposure was 80 years. The court said: "What is important in satisfying constitutional standards is relator's awareness that he faced a *very* substantial prison term." Id. at 1393 (emphasis in original). *See also United States ex rel. Nikodemski v. Pennsylvania*, 320 F.Supp. 1154 (E.D.Pa.1970).

In *Wade v. Wainright*, 420 F.2d 898 (5th Cir. 1969), the Court of Appeals for the Fifth Circuit decided that the failure of a trial court to assure itself that a defendant pleading guilty knew the outer limit of the penalty which could be imposed was a denial of due process. The Ninth Circuit came to the same conclusion in *United States ex rel. Pebworth v. Conte*, 489 F.2d 266 (9th Cir. 1974), but refused to apply the rule retroactively, *Yellowwolf v. Morris*, 536 F.2d 813 (9th Cir. 1976). The Court of Appeals for the Second Circuit, on the other hand, has held that the defendant must establish that he would not have entered his plea had he been told the possible punishment. *See Caputo v. Henderson*, 541 F.2d 979 (2d Cir. 1976); *Kelleher v. Henderson*, 531 F.2d 78 (2d Cir. 1976).[4] We do not decide what position this court will take in the guilty plea context, where the circumstances differ from those in this case.

---

**3.** Fed.R.Crim.P. 11 provides a distinction between a nolo contendere and a guilty plea. The rule requires inquiry of the factual basis of a guilty plea, but no such requirement exists for nolo contendere. The advisory committee explained that such a disclosure would be inconsistent with the allowance of a nolo contendere plea. *See* 1966 Committee Note to Rule 11, 8 J. Moore, Moore's Fed. Prac. § 11.01[3] at 11–6 to 11–7. Thus the action of the trial judge in hearing testimony on Duffy's guilt is inconsistent with the concept of a nolo contendere plea under Fed.R.Crim.P. 11. Our concern here, of course, is whether there has been a constitutional violation, not a failure to observe rule 11 which applies only to federal trials.

**4.** In 1973, the Pennsylvania Supreme Court held that the omission of advice as to the maximum sentence without more did not nullify a guilty plea. *Commonwealth v. McNeill*, 453 Pa. 102, 305 A.2d 51 (1973); *Commonwealth v. O'Neill*, 451 Pa. 458, 304 A.2d 108 (1973). More recent cases have taken the position that there must be a disclosure. *See Commonwealth v. Kulp*, 476 Pa. 358, 382 A.2d 1209 (1978).

Our conclusion on the issue here flows from the rationale adopted in *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). There, the Court observed that when a plea of guilty is entered important federal rights are affected, including the privilege against compulsory self-incrimination, the right to trial by jury, and the opportunity to confront one's accusers. Waiver of these rights cannot be presumed from a silent record. Here, however, there was an express waiver of a jury trial and an agreement to submit the case to the judge sitting without a jury. There was no self-incrimination, the defendant not admitting by the plea that he committed the crime. Moreover, the witnesses did testify in open court, under oath, and with full opportunity for defendant to cross-examine them. The conviction rests upon strong evidence presented to the trier of fact, cf. *Henderson v. Morgan,* 426 U.S. 637, 647–50, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), (White, J., concurring), rather than "a waiver of a trial" as takes place in the usual nolo contendere plea. *See North Carolina v. Alford, supra.*

█ In these highly unusual circumstances, it therefore was not constitutionally required that the trial judge advise the defendant of the maximum sentence that could be imposed anymore than such disclosure is required in advance of any criminal trial, jury or nonjury. The procedure as understood by the defendant and the trial judge was in effect equivalent to a plea of not guilty rather than guilty. That the procedure and understanding of the court may have deviated from the letter of state law does not render it invalid. The label attached to the plea "is of no constitutional significance with respect to the issue now before us, for the Constitution is concerned with the practical consequences, not the formal categorization of state law." *North Carolina v. Alford, supra,* 400 U.S. at 37, 91 S.Ct. at 167.

Furthermore, the record does not establish that the defendant was unaware of the sentence that could be imposed upon him. He was not a novice in the criminal justice system. He had previously received a substantial prison sentence for assault and battery, a lesser crime,[5] and certainly had some comprehension that a sentence could be severe. When the court heard the recommendations of both defendant's counsel and the prosecutor on the sentence, defendant learned what the expected range of punishment would be and even then he did not ask that his plea be withdrawn. Indeed, it was not until the magistrate submitted his report to the district court that the issue of disclosure of the maximum sentence was first raised. Significantly, the defendant did not testify in the district court that he did not know what the maximum sentence was, but only that he had not been told by defense counsel.[6] Nor has the defendant established that had he been told the possible punishment, he would not have entered his plea. *Cf. Caputo v. Henderson, supra; Kelleher v. Henderson, supra.*

We have examined the defendant's other contentions, including the assertion that he was not advised of the nature of the charges against him. In view of the extensive testimony clearly establishing the facts of the case and his guilt, we find no merit to this and his other contentions. Accordingly, the judgment of the district court will be affirmed.

5. The state court record establishes that the defendant was sentenced in 1968 to a seven year term for assault and battery in connection with the attempted strangulation of an elderly woman. He was paroled in 1971 after serving three years and was a resident of a half-way house when he committed the rape to which he pleaded nolo contendere.

6. The public defender who represented defendant at the time he entered his plea was not called to testify in the district court because of his representation that he did not recall whether he had advised the defendant as to the possible sentence that might be imposed. The district judge, however, believed that the defendant was not credible and noted factual inconsistencies, convenient lapses of memory, and dilatory recall of formerly forgotten facts. The court found that the defendant did in fact know that he could receive a substantial prison sentence.

GARTH, Circuit Judge, dissenting.

I dissent from the majority opinion, but I do so most reluctantly. My reluctance stems from the fact that the learned state trial judge, Judge Richette, took great pains to satisfy herself that she could justifiably accept Duffy's plea.

Although one of the issues raised before us concerns a failure by the trial judge to delineate the various elements of the crimes charged, Judge Weis, writing for the majority, very properly points to the extensive care taken by trial Judge Richette at the plea hearing to explore and expose the State's evidence, thereby satisfying that aspect of Duffy's *nolo* plea. See Maj.Op. at 1060–1061. I have no difficulty in agreeing with the majority that no more need have been done than what Judge Richette did when she heard all the evidence and adjudged Duffy guilty.[1]

However, I cannot accept as constitutionally valid Judge Richette's failure to inform Duffy as to the maximum sentence to which he was subject. I am fully aware of the distinction drawn by the majority between the customary guilty plea and the *nolo* plea accepted in this case under the particular circumstances present. Nonetheless, even though this court has not as yet declared itself with respect to the constitutional requirement for each component of a guilty plea or its counterpart in the taking of a *nolo contendere* plea, one of the most significant factors in a defendant's decision to waive his constitutional rights is the extent of punishment which may be imposed by the trial judge. We have recognized this factor in numerous cases in the context of Fed.R.Crim.P. 11, which, of course, applies only where the offender is charged with a federal offense in federal court. Yet the reasoning and logic which led this court to reverse in *Roberts v. United States,* 491 F.2d 1236 (3d Cir. 1974), and in other plea cases in this Circuit, *see Kelsey v. United States,* 484 F.2d 1198 (3d Cir. 1973); *United States v. Jasper,* 481 F.2d 976 (3d Cir. 1973); *Woodward v. United States,* 426 F.2d 959 (3d Cir. 1970); *Berry v. United States,* 412 F.2d 189 (3d Cir. 1969), is just as pertinent here.[2]

A plea of guilty or *nolo contendere* entails the waiver of certain constitutional rights, such as the right to a jury trial, the right to compulsory process, the right to confront witnesses, the right to have the government prove each element of its case beyond a reasonable doubt, the privilege against self-incrimination, and the right to present a defense. Due process requires that waivers of constitutional rights be made knowingly and voluntarily. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Thus, a guilty or *nolo* plea which is not knowing and voluntary, and which thereby does not satisfy the waiver standard of *Johnson,* violates due process and is consequently void. *McCarthy v. United States,* 394 U.S. 459, 467, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Accord-

---

1. *But see McCarthy v. United States,* 394 U.S. 459, 470, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) ("There is no adequate substitute for demonstrating *in the record at the time the plea* is entered the defendant's understanding of the nature of the charge against him." [emphasis in original]). *McCarthy,* of course, was a Rule 11 case, and did not purport to set forth constitutional requirements. Moreover, the unique circumstances of this case distinguish it, at least for the purposes of this issue, from the straight guilty plea in *McCarthy.*

2. Under Rule 11, the pleader must be made aware of the outer limits of punishment, including the maximum sentence, *Woodward v. United States,* 426 F.2d 959, 962 (3d Cir. 1970), ineligibility for parole, *Berry v. United States,* 412 F.2d 189 (3d Cir. 1969), and the fact that a mandatory Special Parole Term would attach to any prison sentence, *Roberts v. United States,* 491 F.2d 1236 (3d Cir. 1974). We have also held that a guilty plea would be vitiated where the pleader was erroneously told he could be exposed to a maximum sentence in excess of that provided by law, *United States v. Jasper,* 481 F.2d 976 (3d Cir. 1973); *Kelsey v. United States,* 484 F.2d 1198 (3d Cir. 1973). In *Berry* we said: "When one enters a plea of guilty he should be told what is the worst to expect." 412 F.2d at 192.

The requirements of Rule 11 are, of course, strict ones, and must be fully adhered to and reflected on the record. *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). *See, e.g., Brown v. United States,* 565 F.2d 862 (3d Cir. 1977).

ingly, the Supreme Court has held the voluntary and knowing waiver of the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers may not, as a constitutional matter, be presumed from a silent record. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).[3] The standard for guilty pleas established in *Boykin,* in my opinion, applies equally to *nolo* pleas, inasmuch as *nolo* pleas involve essentially the same waivers of constitutional rights as do guilty pleas. *See North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970);[4] *Hunt v. Yeager,* 397 F.2d 251 (3d Cir. 1968) (per curiam). *Cf. Hudson v. United States,* 272 U.S. 451, 455, 47 S.Ct. 127, 71 L.Ed. 347 (1926) (*nolo* plea, like guilty plea, constitutes admission of guilt).

Realistically, in pleading guilty or *nolo contendere,* a defendant's primary concern is with the "bottom line", *i.e.,* the sentence which may be imposed. That being the case, I fail to see how we can avoid holding that, as a constitutional prerequisite to the knowing and voluntary waiver of a defendant's constitutional rights, he must be informed of the maximum dimensions of the sentence to which he is exposed, and that the court's instruction in this respect must be express, unambiguous, unequivocal, and must actually appear of record.[5] Indeed, in *Boykin,* the Supreme Court directed that "[w]hat is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its *consequence.*" 395 U.S. at 244, 89 S.Ct. at 1712 (emphasis added). *See Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 92 L.Ed. 309 (1948).[6] *See also Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). Obviously, the most important consequence in pleading guilty or *nolo* is the sentence to be imposed. In my opinion, the clear import of *Boykin* requires an affirmative showing on the record of the maximum sentence to which the defendant may be subject. I do not believe that a plea can be said to be truly voluntary and knowing if the defendant is not so informed by the court.

Other courts have reached the same conclusion. In *Wade v. Wainright,* 420 F.2d 898 (5th Cir. 1969), for example, the Fifth Circuit ruled that the trial court's failure to explain to the defendant the maximum sentence which could be imposed rendered his guilty plea invalid. The court concluded that "there could not be a voluntary relinquishment of the constitutional right to a jury trial by the entry of a plea of guilty by reason of a waiver which was entered into by this state court defendant when he was in total ignorance as to the length of term to which he could be sentenced upon the entry of a plea of guilty." 420 F.2d at 901. The Ninth Circuit has reached a similar result[7] in *Yellowwolf v. Morris,* 536 F.2d

---

**3.** *Boykin* involved an attack on a state court conviction, and therefore laid down constitutional principles.

**4.** The Court stated:
> The fact that his plea was denominated a plea of guilty rather than a plea of *nolo contendere* is of no constitutional significance with respect to the issue now before us, for the Constitution is concerned with the practical consequences, not the formal categorizations, of state law.

400 U.S. at 37, 91 S.Ct. at 167.

**5.** As the court in *Yellowwolf v. Morris,* 536 F.2d 813, 815–16 (9th Cir. 1976) stated, a requirement that knowledge of possible sentences appear on the record "is prophylactic in intent, designed to prevent a prejudicial effect in any case by imposing a more easily reviewable requirement in every case."

**6.** Justice Black in *Von Moltke* stated that the waiver of the right to counsel in the course of a guilty plea "[t]o be valid . . . must be made with an apprehension of the nature of the charges, the statutory offenses included within them, *the range of allowable punishments thereunder,* possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." 332 U.S. at 724, 68 S.Ct. at 323 (emphasis added).

**7.** In *United States ex rel. Smith v. Johnson,* 403 F.Supp. 1381 (E.D.Pa.1975), *aff'd without opinion,* 538 F.2d 322 (3d Cir. 1976), the district court noted that "the importance of assuring that a defendant does not plead guilty except with a full understanding of the charges against him and the possible consequences of his plea was at the heart of" *Boykin. Id.* at

813 (9th Cir. 1976), and *United States ex rel. Pebworth v. Conte,* 489 F.2d 266 (9th Cir. 1974).[8] See also *Bailey v. Macdougall,* 392 F.2d 155 (4th Cir.), cert. denied, 393 U.S. 847, 89 S.Ct. 133, 21 L.Ed.2d 118 (1968) (due process requires that guilty plea not be accepted unless defendant understands its consequences); *Coney v. Wyrick,* 532 F.2d 94, 99–101 (8th Cir. 1976) (a guilty plea made without full understanding of the consequences will not sustain a conviction).[9]

Turning to the facts of this case, it is true, as Judge Weis points out in the majority opinion, that the *nolo* plea here was accepted only after the state trial court judge had heard the state's witnesses testify under oath in open court, and only after defense counsel had been offered an opportunity to cross-examine each witness.

Nonetheless, I cannot agree with the majority's conclusion that the *nolo* plea in this case was "in effect equivalent to a plea of not guilty rather than guilty." Maj.Op. at 1064. As I see it, although the plea in this case was not a "full-blown" guilty or *nolo* plea with the concomitant express, complete waiver of the defendant's rights, the defendant in this case nevertheless waived significant and important rights. He waived the right to a jury trial, the right to confront his accusers (*i.e.,* cross-examine the prosecution's witnesses), and the right to present a defense. Given these waivers, I believe that it was also constitutionally required that Duffy be informed of the maximum sentence to which he was subject. Absent such information, the waivers inherent in his *nolo* plea could not have been

1391. The district court further noted that "[i]t is well settled that prior to the entry of a guilty plea, a defendant should be advised of the consequences of that plea, including the maximum sentence which may be imposed on a plea of guilty." *Id.* at 1392. In *Smith,* even though the state trial court had not advised the defendant of the maximum sentence, the district court refused to issue a writ of habeas corpus because the record revealed that the assistant district attorney had informed the defendant that he faced a possible maximum sentence of 60 years. The district court held that "this conversation provided [defendant] with sufficient knowledge of the consequences of his plea to meet the constitutional minimum standard of *Boykin.*" *Id.; accord, United States ex rel. Nikodemski v. Pennsylvania,* 320 F.Supp. 1154 (E.D.Pa.1970). In the instant case the record does not reveal any such information imparted to, or knowledge on the part of, Duffy. The fact that Duffy had prior experience with the criminal justice system is no substitute for the constitutional requirement of knowledge of the consequences of a plea. Indeed, to hold that such prior familiarity with the criminal justice process satisfies constitutional mandates, is akin to holding that a defendant, once having been arrested and given *Miranda* warnings, need not be informed of his *Miranda* rights on subsequent arrests.

The district court in *Smith* further held that the fact that the defendant's *actual* exposure was *80* years (as opposed to 60 years as stated to the defendant) did not require issuance of the writ, essentially because the district court judge viewed the error as harmless. In the district court's view the crucial constitutional requirement was that the accused had understood the approximate penalty faced. Accordingly, the district court ruled that constitutional

requirements were satisfied in the case (where a 34 year old defendant was informed he faced a 60 year instead of an 80 year maximum prison sentence) because the defendant was aware that he faced a very substantial prison term. 403 F.Supp. at 1393. Even assuming that the district court in *Smith* was correct in its holding, *but cf. United States v. Kelsey, supra; United States v. Jasper, supra,* in the instant case the record is completely barren as to inquiries, information, or waiver respecting the maximum sentence authorized by law in the event Duffy's plea was accepted.

8. The Second Circuit apparently has rejected the contention that failure to inform a defendant of the maximum penalty renders a plea *constitutionally* defective. The Second Circuit requires that the defendant show that he would have acted differently had he been informed of the maximum sentence. *Kelleher v. Henderson,* 531 F.2d 78 (2d Cir. 1976); *Caputo v. Henderson,* 541 F.2d 979 (2d Cir. 1976). I must respectfully disagree with this concept, and I suggest that the Second Circuit's position is not one with which this circuit could be comfortable in light of this court's prior expressions in the Rule 11 context, *see* note 2 *supra.*

9. In *Coney* a state court defendant had understood, based on assurances by his own counsel and by the prosecutor, that he would receive *concurrent* life sentences. The sentencing judge stated he would accept the recommendations, but apparently misunderstood the plea bargain, since he imposed *consecutive* life sentences. The Eighth Circuit upheld the defendant's contentions that his guilty pleas were not knowing and voluntary. *Accord, Luckman v. Burke,* 299 F.Supp. 488 (D.Wis.1969).

voluntarily and knowingly made. In this case it seems to me that the trial judge at the very outset of the proceeding, once she had satisfied herself that the defendant was desirous of pleading *nolo contendere,* and prior to the taking of any evidence, should have informed Duffy of—and should have satisfied herself that Duffy understood—the maximum punishment which he could receive if his plea was accepted.[10] At that point the trial judge, if an affirmative and knowing answer had been received, could have proceeded to hear the state's evidence, and make the determination which she properly made based upon the testimony adduced.

In essence, therefore, I would hold that, even though the taking of a *nolo contendere* plea may sometimes resemble the trial held after a not guilty plea, nevertheless explanation of the maximum sentence to which the defendant is subject is an integral and constitutionally mandated component of the plea proceeding, and must precede the introduction of evidence by the prosecutor. Hence, until the Supreme Court speaks to the contrary, in my opinion such a requirement is a constitutional one, and must be given effect in all plea cases.

For the reasons stated above, I respectfully dissent from the majority's affirmance of the district court's refusal to issue a writ of habeas corpus. I would hold that the district court's order should be reversed, and that the district court should be directed to issue the writ because of the constitutional deficiency in the taking of Duffy's *nolo* plea.

---

**10.** This requirement is by no means a burdensome one. For example, after Duffy's counsel had persisted in stating that Duffy would plead *nolo contendere* and after the trial judge had satisfied herself that Duffy understood the purport of such a plea, Judge Richette simply could have stated something to the following effect:

You realize that after I hear the State's evidence, if I am satisfied that you are entering this *nolo contendere* plea voluntarily and knowingly, and with full understanding of the rights which you are waiving, and if I accept that plea, that you may then be sentenced under the relevant statute to a maximum of . . . . . . . . . . years imprisonment or a fine of $ . . . . . . . . . . . , or both.