Joseph A. WILLIAMS, Petitioner,

v.

Harold J. SMITH, Superintendent, Attica Correctional Facility, Respondent.

No. Civ–76–33.

United States District Court,
W. D. New York.

June 29, 1978.

Philip Halpern, Judith A. Joseph, Buffalo, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen. of the State of New York (James L. Kennedy, Asst. Atty. Gen., Buffalo, N. Y., of counsel), for respondent.

CURTIN, Chief Judge.

Petitioner Joseph A. Williams was originally arraigned on the charge of criminal possession of a dangerous drug in the fourth degree (former section 220.15 of the New York State Penal Law), a class D felony, in Supreme Court, Erie County, on May 4, 1973. He was represented at the arraignment by William Sims, Esq. On June 6, 1973, Julio Garcia, Esq., was assigned to represent petitioner on the pending drug charge. Plea negotiations ensued. On June 22, 1973, petitioner appeared with his counsel in Supreme Court before the Honorable Frederick M. Marshall to withdraw his not-guilty plea and to enter a plea of guilty to the charge of criminal possession of a dangerous drug in the fifth degree (former section 220.10 of the New York State Penal Law), a class E felony. Before accepting petitioner's guilty plea, Justice Marshall established on the record a factual basis for the guilty plea. Petitioner acknowledged that on July 26, 1972, he had knowingly and unlawfully possessed a narcotic drug consisting of a certain quantity of cocaine. He stated that he had discussed all aspects of the case with his attorney. He indicated that he realized he waived his right to a jury trial by pleading guilty. He

also stated that he had received no promises as to the sentence which Justice Marshall might impose. Justice Marshall informed petitioner that the maximum penalty for a conviction on the charge of criminal possession of a dangerous drug in the fifth degree was up to four years in a State institution. Justice Marshall then set sentencing for July 16, 1973, and indicated that he would order a probation investigation of petitioner's background.

Upon learning that petitioner had been convicted and sentenced to terms of imprisonment on a number of occasions, Justice Marshall ordered on August 6, 1973, that a hearing be held pursuant to § 400.20 of the Criminal Procedure Law and § 70.10 of the Penal Law to determine whether or not petitioner should be subjected to extended incarceration and lifetime supervision as a persistent felony offender. The date for this hearing was originally set as September 4, 1973. Under the applicable provisions of the Penal Law, Justice Marshall was vested with the authority to sentence one determined to be a persistent felony offender to a minimum sentence of 15 years to life in prison.

Recognizing the severity of the sentence which his client faced, petitioner's counsel requested a copy of the pre-sentence investigation report on August 17, 1973. On September 4, 1973, defense counsel's motion for an order for a complete physical examination of petitioner was granted by Justice Marshall. Sentencing was thereafter adjourned to September 21, 1973, at which time petitioner and his counsel, Mr. Garcia, again appeared before Justice Marshall.

At the sentencing proceeding, petitioner did not contest the accuracy of his prior record of convictions that was before the Court. Petitioner's counsel stated that petitioner had no claim that any of his prior convictions were obtained as a result of any deprivations of constitutional rights. Referring to the medical report that was before the Court, petitioner's counsel urged Justice Marshall to impose the normal four-year sentence for the crime to which peti-

tioner pleaded guilty. However, Justice Marshall then found petitioner to be a persistent felony offender and sentenced him to an indeterminate sentence of imprisonment with a maximum term of life and a minimum term of 15 years.

In his appeal, petitioner claimed that his conviction was void because the trial court had failed to fully advise him of the possible consequences of his plea at the time it was entered. He based his claim on the fact that Justice Marshall had told him that the maximum term of imprisonment for the charge to which he was pleading guilty was four years without advising him that he faced classification as a persistent felony offender which would carry a considerably enhanced sentence. The Appellate Division, Fourth Department, rejected petitioner's claim and found that petitioner had been put on notice by the court of the possibility of his being classified as a persistent felony offender prior to the actual sentencing. In its decision, the Appellate Division noted that petitioner had acknowledged that he was subject to an extended sentence and that he had made no effort to vacate or withdraw his plea. That Court then concluded "[u]nder such circumstances it is clear that when defendant appeared for sentencing he was not relying on the representation made by the court when his plea was taken as to the maximum sentence that could be imposed by the court." *People v. Williams,* 47 A.D.2d 989, 366 N.Y.S.2d 713, 714 (4th Dep't 1975). On June 18, 1975, leave to appeal to the New York State Court of Appeals was denied by order of the Honorable Matthew Jasen.

After he had exhausted his state court remedies as required by 28 U.S.C. § 2254(b), petitioner then filed an application for writ of habeas corpus with this court on January 26, 1976. On October 7, 1976, Michael Davidson, Esq., was appointed to represent petitioner, and an amended petition was filed on October 27, 1976. Briefs were subsequently filed by both sides, and a hearing was held on July 21, 1977. At the hearing, petitioner testified and also called his former attorney, Julio Garcia, and former Assistant District Attorney William Worth-

ington. On January 19, 1978, Michael Davidson was relieved as counsel of record and Philip Halpern was assigned to represent petitioner in all future proceedings in this matter.

In his application to this court, petitioner urges that because the trial judge misinformed him about the possible maximum sentence to which he might be subjected just prior to his entering his guilty plea, that plea was entered without full appreciation of its possible consequences and should be declared constitutionally invalid under the standards which require that a guilty plea be entered in a voluntary, knowing, and intelligent manner. *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Machibroda v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *Saddler v. United States,* 531 F.2d 83 (2d Cir. 1976).

■ It is well established that the trial judge is responsible for assuring that the accused has a full understanding of what his guilty plea connotes and of its consequences. *Boykin v. Alabama, supra,* 395 U.S. at 244, 89 S.Ct. 1709. Information concerning the maximum possible sentence to which an accused may be subjected is a "consequence" of a plea. *See Jones v. United States,* 440 F.2d 466 (2d Cir. 1971). In this circuit, the two-pronged test for determining the constitutional validity of a state court guilty plea in the event of sentencing misinformation is (1) whether the defendant was aware of actual sentencing possibilities, and, if not, (2) whether accurate information would have made any difference in his decision to enter a guilty plea. *Caputo v. Henderson,* 541 F.2d 979, 984 (2d Cir. 1976).

■ At petitioner's request, an evidentiary hearing was held to enable the court to make the factual determinations required by *Caputo v. Henderson.* My review of the trial court proceedings and the testimony offered in this court leads me to conclude that petitioner would not have altered his plea, even if he had been aware of the possible enhanced sentence he faced as a

persistent felony offender, and that his plea was thus voluntary as a matter of fact.

There is no doubt that the state trial court initially provided petitioner with inaccurate information concerning the possible maximum sentence he faced based on his guilty plea. As recounted above, Justice Marshall first advised petitioner that the maximum penalty he faced was up to four years in a state institution. See Transcript of Plea Proceeding of June 22, 1973, at p. 3.

The first question addressed at the evidentiary hearing in this court was whether or not the petitioner was aware of the actual sentencing possibilities at the time he entered his guilty plea. William Worthington, who is now a private attorney but who was an Assistant District Attorney at the time that petitioner was originally charged with possession of cocaine in 1973, testified that he had not discussed with Mr. Garcia the possibility that petitioner might be sentenced as a persistent felony offender because he was not aware at that time that petitioner had a record of prior felony convictions.

Mr. Garcia, who testified candidly throughout the hearing, stated that he had never discussed petitioner's prior record with petitioner during the course of plea negotiations. He was unaware of the possibility that petitioner might be sentenced as a persistent felony offender and was thus unable to advise his client accordingly. Mr. Garcia indicated that he had been counsel of record in only four or five criminal cases prior to his representation of petitioner and that petitioner's case was the first one which he had handled in which the persistent felony offender statute became an issue, although he did testify that he had some familiarity with the second felony offender statute.

Petitioner confirmed that he had not brought his prior record of convictions to Mr. Garcia's attention prior to the plea proceeding. He also testified that, at the time of the plea proceeding, he was not familiar with the persistent felony offender statute and that he had relied on Justice Marshall's representation that the maximum sentence which he would receive in exchange for his guilty plea was four years incarceration.

There is nothing in the record to indicate that Justice Marshall realized that petitioner might face sentencing as a persistent felony offender when he accepted petitioner's guilty plea. Petitioner's prior record of arrests and convictions was apparently before the court at the time of petitioner's arraignment. However, another judge presided at that proceeding. It was not until he received the pre-sentence report from the probation department that Justice Marshall became aware of the persistent felony offender problem. On August 6, 1973, Justice Marshall entered the order scheduling a hearing for September 4, 1973, to determine whether or not petitioner should be "subjected to extended incarceration and lifetime supervision" as a persistent felony offender, and he directed that a copy of this order and a notice of the date for the hearing be served on the defendant-petitioner at the Erie County Jail and on Attorney Garcia.

Petitioner also learned of the potential severe sentencing consequences that he would face should he be classified as a persistent felony offender in a letter to him from his attorney dated August 10, 1973. A copy of this letter is included in petitioner's Exhibit # 12. In that letter, Mr. Garcia advised petitioner as follows:

> The possibilities in your case are: Maximum—four years; definite—one year; a five years probation; sentencing as a persistent felony offender with a minimum fixed by the court of 15–25 and maximum of life.

In this letter, Mr. Garcia advised his client that he had first learned of the persistent felony offender problem in his conversation with Justice Marshall on the morning of August 10, 1973. That petitioner's counsel was aware of the seriousness of the situation is also reflected in his letter of August 17, 1973, to Justice Marshall, which is contained in petitioner's Exhibit # 7, and in counsel's motion for a medical examination of petitioner which was granted by Justice Marshall's order of September 4, 1972. See petitioner's Exhibits # 9 and # 10.

It is thus clearly established in the record that petitioner and his counsel knew well in advance of the sentencing date of September 21, 1973, that petitioner faced possible classification as a persistent felony offender and the severe sentencing options available to the court under Penal Law § 70.10.

It is also clear from the trial court record and the testimony of the witnesses that, even after learning of the persistent felony offender problem, neither petitioner nor his counsel ever objected in any way, either on or off the record, to the fact that petitioner faced a much more stringent sentence than that of which he had been advised by Justice Marshall at the time he entered his guilty plea. No effort was made by counsel to withdraw the guilty plea pursuant to former Criminal Procedure Law § 220.60(4). There is no mention of dissatisfaction or objection in either petitioner's or his counsel's correspondence with Justice Marshall. See petitioner's letter of September 18, 1973, to Justice Marshall contained in petitioner's Exhibit # 7 and Mr. Garcia's communication to Justice Marshall of August 17, 1973, also contained in petitioner's Exhibit # 7.

█ Mr. Garcia testified before me that he had not realized that he could move to withdraw petitioner's guilty plea and he had thus failed to advise petitioner that such a motion to withdraw the guilty plea was possible. Had petitioner and his counsel so moved under C.P.L. § 220.60(4), it would appear under New York Case law that petitioner may well have been entitled to withdraw the plea and to proceed on the original charge for which he was indicted. See, e. g., People v. Nettles, 30 N.Y.2d 841, 335 N.Y.S.2d 83, 286 N.E.2d 467 (1972); People v. Woods, 50 A.D.2d 720, 374 N.Y. S.2d 865 (4th Dep't 1975).[1] It should be noted, however, that permission to withdraw a plea of guilty is not a matter of constitutional right but rather rests in the sound discretion of the court. See United States ex rel. Rivera v. Follette, 395 F.2d 450 (2d Cir. 1968); People v. Etheridge, 29 A.D.2d 679, 287 N.Y.S.2d 806 (2d Dep't 1968).

While petitioner testified before me that he would not have pleaded guilty if he had known that he might be sentenced as a persistent felony offender, the record leads me to a contrary conclusion.

It is important to recognize that petitioner was engaged in a two-stage process. After he pleaded guilty with the expectation that he would receive a maximum term of four years, he received subsequent notice, both from his attorney and from the trial judge, which clearly informed him of the possibility of a much more stringent prison sentence. From the time that he was put on notice of a persistent felony offender problem until the time of his sentence, petitioner had ample opportunity to voice some sort of protest about the situation he faced. However, even at the sentencing proceeding where petitioner acknowledged his past record of felony convictions, no protest was raised either by petitioner or his counsel as to the propriety of the imposition of a life sentence under § 70.10 of the Penal Law. Petitioner testified in this court that, prior to his sentencing, both he and his counsel felt that it was inconceivable that Justice Marshall might impose a life term with a 15 year minimum. However, it is clear from his plea to Justice Marshall at the time of sentencing that petitioner recognized that a stringent prison term was possible:

> [W]hat I'm asking you now is to give me a little leverage because like he said I am not in shape physically to do no long time. I'm not asking you to turn me lose (sic), I know I have got to get some time. I would like a little leverage that would give me time to get back out on the street. If I get extended sentence that is

---

1. Because I have concluded that petitioner's plan would not have been different even if informed by accurate sentencing information, I need not decide whether or not petitioner's failure to move pursuant to former C.P.L. § 220.60(4) to withdraw the guilty plea amount-ed to the type of state procedural default that would foreclose federal habeas corpus consideration of his constitutional claim. See Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

it for me, you know. You might just as well liquidate me, that is all, because I am sixty now and so I don't think, you know, you won't have any more trouble out of me.

Transcript of Plea Proceeding of September 21, 1973, at 3 and 4. Aware of the range of sentencing alternatives which he faced, petitioner gambled that he would receive no more than the four year term referred to by Justice Marshall at the plea proceeding. In retrospect, petitioner's gamble was, perhaps, not a wise one, although he would have faced the persistent felony offender problem had he been convicted after trial as well. However, his efforts now to raise this claim in a federal habeas corpus proceeding after his initial gamble did not pay off as he had hoped must be rejected.

This is not a case where an accused has entered a guilty plea based upon a *promise* by a judge who thereafter fails to adhere to his promise. In such a case, fundamental fairness would require that the judge, on his own motion, reinstate the not guilty plea. *United States ex rel. Elksnis v. Gilligan,* 256 F.Supp. 244 (S.D.N.Y.1966). It is clear from my review of the record that Justice Marshall made no promises to petitioner.

█ Since there was a serious misunderstanding at the plea proceeding and since misinformation was supplied to petitioner by the trial judge, it would have been the better practice for the trial judge, on his own motion, to have allowed petitioner to replead after he had been notified of the persistent felony offender problem. Under *Caputo v. Henderson, supra,* there is apparently no constitutional mandate that the trial judge accord an accused an opportunity to replead even though the trial judge may have provided misinformation about sentencing alternatives. In this instance, at least, I am satisfied that the *Caputo* standards have been satisfied and that petitioner's plea would not have been different even if he had been accurately informed. By holding a hearing and allowing petitioner to replead if he chose to do so, the trial judge could have clarified the record when the original confusion occurred. This would have obviated the need for a fact-finding process in federal court some four years later. By failing to do so, the trial judge never did satisfy himself on the record that petitioner understood the actual permissible range of sentences which might be imposed. *See Boykin v. Alabama, supra,* 395 U.S. at n. 7, 89 S.Ct. 1709.

█ In light of petitioner's age, his diabetic condition which has led to the loss of a leg since his imprisonment, and the fact that his last felony conviction was recorded in 1955, the life sentence seems to be particularly stringent. However, since the sentence is within the legal limit, its severity would not be grounds for relief in a federal habeas corpus review.

For these reasons, the petition for writ of habeas corpus is denied in all respects and the petition is dismissed.

Petitioner's counsel are to be commended for the concern which they have demonstrated for their client and for the high caliber of representation which they have provided him throughout this proceeding.

Certificate of probable cause is granted.

Permission to appeal in forma pauperis is denied with the qualification that the petitioner may file a notice of appeal with the Clerk of the United States District Court, United States Court House, Buffalo, New York 14202, without the payment of filing fees.

This denial does not prevent the petitioner from applying directly to the Court of Appeals for the Second Circuit, United States Court House, Foley Square, New York, New York 10007, for permission to prosecute an appeal in forma pauperis.

So ordered.